UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) CASE NO. 1:17-CR-10007-MLW |
| v. | ) |
| | ) |
| DAMIEN GALLOWAY, | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE**

The United States of America, through undersigned counsel, hereby submits this opposition to the Defendant's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) ("Defense Motion"), ECF #73. Defendant's motion fails on several grounds and should be denied.

The Defendant is a healthy, 32-year old male, who does not suffer from a medical condition that constitutes an "extraordinary and compelling reason" sufficient to warrant modification of his sentence pursuant to § 3582(c)(1)(A)(i). The Warden's response to the Defendant's request for compassionate release indicates that the Defendant does not have an underlying medical condition that would indicate an increase risk under COVID-19. *See* ECF #73-2. Seeing this first-level failure as an obvious barrier, the Defendant submitted medical records showing that fifteen years ago he was previously diagnosed with asthma. *See* ECF #73-4. Guidance from the CDC suggest that even if the Defendant suffered from asthma, which he does not, this condition would not place him at severe risk of serious illness should he contract COVID-19.

Moreover, FCI-Herlong (where Defendant is incarcerated) is not significantly at risk. At present, only three staff members at the institution (and eight inmates out 1028 total inmate) have

a confirmed COVID-19 diagnosis.[1]  This strongly suggests that the policies and procedures implemented by the Bureau of Prisons ("BOP") at FCI-Herlong have proven successful in containing and mitigating the spread of the virus.

*Lastly*, even if the Defendant were able to satisfy the "extraordinary and compelling reason" threshold necessary to consider compassionate release, the balance of the remaining factors set forth in § 3553(a) do not weigh in favor of his release.  The Defendant is a criminal offender whose past criminal activity reflects controlled substances, multiple firearms convictions, and accessory after the fact to firearm assault.  *See* ECF #39, p. 14; PSR ¶¶ 42, 43, 44, 45, 47.  Given the gravity of the Defendant's drug trafficking offenses as well as his prior criminal history involving firearms, and recent disciplinary report while incarcerated, release of the Defendant would present an untenable risk of danger to the community and would not be "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  Given all the circumstances, including the nature of Defendant's crimes, releasing Defendant back to the community does not comport with the requirements of § 3582(c).

## PROCEDURAL BACKGROUND

On November 16, 2016, the Defendant was charged by Complaint with being a felon in possession of firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).  These charges resulted from an arrest on September 16, 2016.  *See e.g.,* ECF #1, p. 3.

This Firearm Case was the Defendant's second federal prosecution.  At the time of his arrest, he had concluded supervised release from a prior federal drug conviction, less than a year

---

[1] See COVID-19 Coronavirus, Federal Bureau of Prisons, available at https://www.bop.gov/coronavirus/ (last accessed November 9, 2020).

earlier. See Docket No. 10-CR-10351-MLW (the "2010 Drug Case"). On October 7, 2015, Judge Sorokin reduced the Defendant's term of supervised release for the 2010 Drug Case by one year under 18 U.S.C. § 3583(e)(1),[2] despite his recently accruing new state charges for operating without a license.[3]

On April 14, 2017, the Defendant waived indictment and pled guilty to the instant Information charging him with being a felon in possession of firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). *See* ECF #33.

On October 1, 2018, the Defendant filed a motion to correct sentence, and memorandum. ECF #56. This motion was later amended on June 22, 2020, to include a claim under *Rehaif* to vacate the conviction (ECF #63), which was later withdrawn on August 19, 2020 (ECF #71, 72).[4] Shortly thereafter, on October 28, 2020, the Defendant filed the instant motion seeking compassionate release based upon an asthma condition. ECF #73. On November 4, 2020, the Defendant then submitted medical records under seal. ECF #75, 73-4.

## APPLICABLE LEGAL FRAMEWORK

Section 3582(c) begins with the principle that "a court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). The statute, adopted as part of the Sentencing Reform Act of 1984, originally permitted judicial relief only upon a motion by the Director of Bureau of Prisons. The provision was amended by Section 603(b) of the First

---

[2] *See* Docket No. 10-CR-10351-MLW, ECF #157.

[3] *See* Docket No. 10-CR-10351-MLW, ECF #127.

[4] Under then-existing caselaw, *United States v. Burghardt*, 939 F.3d 397, (1st Cir. 2019), *cert. denied*, 140 S. Ct. 2550 (2020), this claim was meritless. The public docket for the 2010 Drug case showed that he in fact served 48 months in federal prison.

Step Act, effective December 21, 2018. Under the statute as amended, the court may consider a defendant's motion for compassionate release following the exhaustion of his or her administrative remedies with the BOP or 30 days after submitting a request to the appropriate Warden, whichever is sooner:

> The court <u>may not modify a term of imprisonment once it has been imposed except that</u>, . . . the court, upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, <u>may reduce the term of imprisonment</u>…

18 U.S.C. § 3582(c)(1)(A) (emphasis added). The First Step Act did not amend the eligibility requirements for compassionate release, which are set forth in 18 U.S.C. § 3582(c)(1)(A) and Section 1B1.13 of the United States Sentencing Guidelines. The court can only modify a sentence if, "after considering the factors set forth in section 3553(a) to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction," 18 U.S.C. § 3582(c)(1)(A)(i); or that the defendant is at least 70 years old and has served at least 30 years in prison, among other things. 18 U.S.C. § 3582(c)(1)(A)(ii). In either case, the proposed reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). These statements are contained in U.S.S.G. § 1B1.13. These statements mandate that a release should only occur if "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g) …." *See* USSG § 1B1.13(2).

## ARGUMENT

Defendant has not established that he satisfies the requirements of the statute. "[A] court may reduce a term of imprisonment under the compassionate release provision if it: (1) finds that extraordinary and compelling reasons warrant the reduction; (2) finds that the defendant will not

4

be a danger to the safety of any other person or the community; and (3) the sentencing factors outlined in 18 U.S.C. §3553(a) weigh in favor of reduction." *United States v. Khawaja*, 2020 WL 1940848, at *2 (D.N.H. April 22, 2020). "The defendant has the burden of showing that he or she is entitled to a sentence reduction." *Id*. "The court has 'broad discretion in deciding whether to grant or deny a motion for sentence reduction.'" *Id*. (citation omitted). Defendant's motion should be denied because Defendant cannot satisfy the three requirements of the statute that would justify release.

I.   **THE DEFENDANT DOES NOT MEET THE REQUIREMENT OF EXTRAORDINARY AND COMPELLING REASON WARRANTING A SENTENCE REDUCTION**

Once the threshold precondition of administrative exhaustion is satisfied, the court may modify a sentence only if, "after considering the factors set forth in section 3553(a) to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).[5] The proposed reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

   A.   **The Standard of Extraordinary and Compelling Reasons Warranting a Sentence Reduction**

The defendant bears the burden of proving that he is entitled to relief under 18 U.S.C. § 3582. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ("[A] defendant, as

---

[5] Section 3582(c)(1)(A)(ii) provides other bases by which a defendant may be eligible for compassionate release; however, none of these factors are applicable in this case.

the § 3582(c)(2) movant, bears the burden of establishing that a retroactive amendment has actually lowered his guidelines range in his case.").

The Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons exist." U.S.S.G. § 1B1.13 Application Note 1. These include an assessment of the defendant's medical condition, age, family circumstances, and other reasons:

> (A) Medical Condition of the Defendant.—
>
> > (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> >
> > (ii) The defendant is—
> >
> > > (I) suffering from a serious physical or medical condition,
> > >
> > > (II) suffering from a serious functional or cognitive impairment, or
> > >
> > > (III) experiencing deteriorating physical or mental health because of the aging process,
> >
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant – The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

U.S.S.G. § 1B1.13, Application Note 1.

The policy statement is not the only source of criteria the court may apply in determining whether "extraordinary and compelling reasons" exist to justify a reduction. Application Note 1(D) permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at App. Note 1(D). Accordingly, a court may grant compassionate release not only on grounds specified by the Sentencing Commission, but also those set forth in the relevant BOP regulation governing compassionate release.

That regulation appears at BOP Program Statement 5050.50. This program statement was amended effective January 17, 2019, following passage of the First Step Act. It replaces the previous program statement, 5050.49, CN-1. Program Statement 5050.50 contains standards that are both more extensive than and slightly different from those stated in the § 1B1.13 Policy Statement. As is relevant here, the Program Statement defines a "debilitated medical condition" as follows:

> Debilitated Medical Condition. RIS[6] consideration may also be given to inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover. The BOP should consider a RIS if the inmate is:
>
> - Completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or
>
> - Capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours.

---

[6] RIS refers to a "reduction in sentence." Program Statement 5050.50 at 4.

7

>   The BOP's review should also include any cognitive deficits of the inmate (e.g., Alzheimer's disease or traumatic brain injury that has affected the inmate's mental capacity or function).  A cognitive deficit is not required in cases of severe physical impairment, but may be a factor when considering the inmate's ability or inability to reoffend.

Program Statement 5050.50 at 5.[7]

### B. The Defendant Has Not Proven Extraordinary and Compelling Reasons Exist to Warrant a Sentence Reduction

The CDC has identified that certain individuals, based upon their increased age and/or preexisting medical conditions, are at an increased risk of severe illness from COVID-19.  The CDC currently has identified the following preexisting medical conditions of placing individuals at any age "**at increased risk** of severe illness from COVID-19:

- Cancer
- Chronic kidney disease
- COPD (chronic obstructive pulmonary disease)
- Immunocompromised state (weakened immune system) from solid organ transplant
- Obesity (body mass index [BMI] of 30 or higher)
- Serious heart conditions such heart failure, coronary artery disease, or cardiomyopathies
- Sickle cell disease

---

[7] As noted, the Program Statement's provisions regarding the class of inmates eligible for compassionate release is slightly different from the related provision in Section 1B1.13.  To the extent that the Program Statement and the Policy Statement conflict, it is the Policy Statement – *i.e.*, the source directly authorized by statute – that is binding.  An interpretation in the Program Statement that does not contradict the Policy Statement, however, is entitled to some weight.  *See Reno v. Koray*, 515 U.S. 50, 61 (1995) (BOP program statements, which do not require notice and comment, are entitled to "some deference" where they reflect a "permissible construction of the statute") (internal quotation marks omitted).

- Type 2 diabetes mellitus."[8]

The Defendant acknowledges that he is not suffering from any of these medical conditions. However, he claims that he has previously been most recently noted as suffering from asthma as a teenager fifteen years ago and that this diagnosis places him in danger were he to contract the COVID-19 virus. D. Motion, at 13-14.

Nothing in the Defendant's medical records indicates that he suffers from chronic or severe asthma at this time. Indeed, the last reported instance of asthma in his medical records appears to have been in 2004/2005, when the Defendant was fifteen years old. ECF #74, Ex. 4. While the medical records do reflect a diagnosis of "moderate intermittent asthma," the records also indicate that he did not have any specific complications. *See* ECF #74-4, p. 42. The medical records stop at 2005, but what they do show is that at seventeen years old, the Defendant displayed no specific indications that the asthma was anything beyond intermittent.

Even so, asthma is not among the conditions identified by the CDC as definitively placing an individual at increased risk of severe illness should they contract the COVID-19 virus. Rather, based upon the scientific and medical knowledge available to date, the CDC has noted that people suffering from moderate to severe asthma may potentially be at higher risk of medical complications were they to contract the COVID-19 virus.[9]

---

[8] *See* CDC, *People with Certain Medical Conditions* (updated September 11, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed September 21, 2020) (emphasis in original).

[9] *See* CDC, *People with Moderate to Severe Asthma* (updated September 11, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last accessed September 21, 2020).

Here, Defendant has offered nothing to suggest that he is even still suffering from asthma, let alone moderate to severe asthma.  Indeed, the Warden's response to the Defendant's request states affirmatively that the Defendant does not have any underlying medical condition, suggesting that his adolescent asthma is no longer reflected in his medical history.  See ECF #73-2.  Tellingly, the Defendant did not offer an affidavit, or any other proof in support of his motion.  As a result, there is no basis in the record to conclude that he is currently suffering from an underlying medical condition that would even open the door to considering a motion for compassionate release.  Given this, it cannot be said that the Defendant is especially vulnerable to any complications from the COVID-19 virus.

Under these circumstances, the Defendant has failed to establish the existence of an "extraordinary and compelling" reason warranting his consideration for compassionate release.  *See, e.g., United States v. Rodriguez,* 2020 WL 4581741, *2-*3 (D. Conn. Aug. 10, 2020) (concluding that defendant's asthma did not constitute an "extraordinary and compelling reason" supporting defendant's release request); *United States v. Jackson,* 2020 WL 4365633, *2 (N.D. Tex. July 30, 2020) (same), *appeal filed* (5th Cir. Aug 13. 2020); *United States v. Mazzo,* 2020 WL 3410818, *3 (D. Conn. June 22, 2020) (same).  Consequently, the Defendant has failed to prove that an extraordinary or compelling reasons exist to warrant a reduction in his sentence.

## II.      THE DEFENDANT REMAINS A DANGER TO THE PUBLIC AND THE SECTION 3553(a) FACTORS DO NOT WEIGH IN FAVOR OF RELEASE

Even when extraordinary and compelling reasons exist, however, a court should only grant a motion for release if it determines that the defendant is not a danger to the public.  USSG § 1B1.13(2).  And, the court must consider, in general, whether the § 3553(a) factors weigh in favor of release.  *See* 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13.  In this case, neither requirement suggest release is appropriate.

The Defendant has failed to demonstrate that he can satisfy the principal requirement for compassionate release: that he does not present a danger to the community. The statute states that the court may reduce a sentence if "a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community." 18 U.S.C. § 3582(a)(1)(A)(ii). Defendant's Motion does not even make any effort to show that he would not pose a risk if released. In fact, Defendant still presents a significant danger to the community.

The Defendant is a recidivist criminal who deals in narcotics, carries loaded weapons, and flouts court obligations. As the prosecutor noted in sentencing in 2017,

> Other aspects of Galloway's criminal history stand out as well. Such as the fact that he has been under nearly continuous criminal justice supervision since the age of 15 during which time he been determined to be delinquent in one case, been convicted of 17 adult offenses in seven more cases and has been sent to jail six times. PSR at ¶ ¶ 41-47. Or that he has violated probation five times (despite the absence of any serious violations in federal court) and has repeatedly committed new crimes while already under criminal justice supervision. Id. at ¶ ¶ 40 (probation violation); 41 (four probation violations in 2008-09); 42 (commission of gun offense while on pretrial release for earlier drug offense); 43 (commission of new offense while on pretrial release); 43 (same). The defendant's disinterest in his criminal justice obligations also justifies the requested guideline sentence.

ECF # 39. This, of course, was the second time that the Defendant had been before the District Court. At his prior sentencing, the Defendant successfully convinced Judge Gertner to impose a sentence that was 103 months below the low-end of the career offender guideline sentence range.

With respect to the Section 3553(a) factors, the nature of the instant offense tells the entire story. As the prosecutor described the offense conduct as follows:

> members of BPD's District C-11 Drug Control Unit saw the defendant engage in what they believed to be two drug deals inside a Honda parked in the lot of a small shopping center in Mattapan. PSR at ¶¶ 9-23. When the officers approached the Honda to investigate, Galloway burst out of the passenger door and pushed one of the officers away in an effort to flee. Id. at ¶ 17. As he came out of the car, cash and a bag containing blue objects (later determined to be oxycodone pills) fell to the ground. Id. at ¶ 11. After

11

> a resulting struggle, the officers first felt and then recovered a firearm that Galloway was carrying in his right front pants pocket. Id. at ¶19. That gun turned out to be a Ruger Model .380 semi-automatic (reported stolen out of Florida in 2015) loaded with six rounds of .380 ammunition. Id. at ¶ 20. The police also recovered the $440 in cash and the plastic bag (that contained 50 oxycodone pills) that fell to the ground as Galloway attempted to run and later determined that Galloway was in possession of an additional $565 in cash and an Apple iPhone. Id. at ¶ 18. More oxycodone and a digital scale were recovered from the center console of the Honda, whose driver, Unique Long, was in possession of $345 herself. Fifteen more oxycodone tablets were recovered from Tyler Jones, one of the two men that the officers saw Galloway meeting with shortly before they approached. Id.at ¶ 23

ECF #50, p. 5.

The fact of the instant conviction, and the context of the case arising mere months after successfully obtaining a reduction of supervised release, suggest that the Defendant remains a danger and that the sentencing factors do not warrant a reduction. The Warden's response to his request for compassionate release also notes that the Defendant "received a second consecutive risk pattern score of High based on the First Step Act-Risk Recidivism Level." Additionally, the Warden noted that the Defendant has been subject to an incident report for failing to follow the rules and regulation of the Bureau of Prisons. ECF #73-2.

The government will not belabor the issue, which was artfully and eloquently developed by the parties in writing and at the sentencing hearing, and thoughtfully addressed by the Court. See ECF #53. Only three years ago, this Defendant was sentenced to a specific term of 64 months. He is not currently suffering from any underlying medical condition that would entitle him to compassionate release, and he should serve the remainder of the term.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion for Compassionate Release from Incarceration.

Respectfully submitted,

ANDREW E. LELLING
UNITED STATES ATTORNEY

By:   */s Philip A. Mallard*
      PHILIP A. MALLARD
      Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s Philip A. Mallard*
PHILIP A. MALLARD
Assistant United States Attorney

Date: November 9, 2020